UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RICHARD COSGROVE,<br><br>        Plaintiff,<br><br>v.<br><br>GLEN WHORTON, an individual,<br><br>        Defendant. | 3:06-cv-00703-LRH-RAM<br><br>ORDER |

Five post-trial motions are presently before the court. Plaintiff Richard Cosgrove filed the following three motions: Motion for Leave to Serve and File Amended Complaint (#49[1]), Motion for Permanent Injunctive Relief (#50), and Motion for Attorney's Fees (#51). Defendant Glen Whorton filed the remaining two motions: Motion for Remittitur, or in the Alternative, Motion for New Trial (#56) and Motion for Stay of Execution or Proceeding for Enforcement of Judgment (#62).

I. **Facts and Procedural History**

The present motions come after a four-day trial in which a jury returned a verdict in favor of Plaintiff Cosgrove. Cosgrove prevailed on the single claim alleged in his complaint for First Amendment retaliation in violation of 42 U.S.C. § 1983. The jury awarded Cosgrove $350,000 in compensatory damages.

---

[1] Refers to the court's docket

The following evidence was presented at trial:

Cosgrove was an employee of the Nevada Department of Corrections ("NDOC") at the Nevada State Prison ("NSP") from 1991 until he was terminated on June 4, 2006. On December 5, 2005, two NDOC lieutenants inspected the guard tower where Cosgrove was stationed. Following denials by Cosgrove of having any prohibited items in the tower, the lieutenants discovered an RCA miniature screen television and a DVD player hidden in one of the tower vents. Three DVDs containing the entire fifth season of *The Sopranos* television series were found in a backpack of Cosgrove's, which was also in the tower. Upon these discoveries, Cosgrove admitted that the items were his. An internal investigation was thereafter conducted. Cosgrove provided a limited statement for the investigation.

Upon completion of the investigation and on January 20, 2006, William Donat, Warden at NSP, sustained allegations that Cosgrove neglected his duty and made false and misleading statements. Donat recommended Cosgrove's termination. Pursuant to policy, Donat's findings and recommendation were then processed through state administrative proceedings.

In April 2006, during the time the administrative process was pending relative to the misconduct issue, there had been discontent among prison personnel over changes in prison policy that had been instituted by Warden Donat, who had been appointed Warden of the NSP the previous year. Cosgrove was one of those who was discontented and made public statements to a reporter for a Reno newspaper shortly before April 20, 2006. On that date, the *Reno Gazette Journal* published an article that quoted Cosgrove's criticism of Warden Donat's operation of NSP.

On May 19, 2006, in the course of the state personnel process concerning the DVD/TV misconduct issue, Cosgrove was placed on administrative leave and received notice of Warden Donat's recommended termination. On May 30, 2006, a pre-disciplinary hearing was held to determine whether Cosgrove should be terminated. An associate warden of operations at NDOC, Wes Mattice, was appointed as the hearing officer. Following the conclusion of the hearing on

1  June 1, 2006, Mattice concluded that Cosgrove had provided false statements, neglected his duty,

2  and jeopardized NSP's security.  Mattice found that Cosgrove should be terminated effective

3  June 4, 2006, and his recommendation was referred to Defendant Whorton, then-Director of

4  NDOC, who adopted Mattice's recommendation and terminated Cosgrove on June 4, 2008.

**II.     Discussion**

**A.  Motion to Conform the Pleadings to the Evidence[2] and Motion for Injunctive Relief**

Cosgrove's first motion asks this court to permit amendment of the complaint pursuant to Federal Rule of Civil Procedure 15(b) in order to name Howard Skolnik, current Director of NDOC, in his official capacity.  Cosgrove, in a separate motion, also asks this court to enjoin Skolnik to reinstate Cosgrove and remove termination paperwork from Cosgrove's departmental file and state personnel jacket.  The court denies both of these motions.

Federal Rule of Civil Procedure 15(b)(2) provides,

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move–at any time, even after judgment–to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

In support of his motions to amend the pleadings and impose injunctive relief against Skolnik, Cosgrove argues there was "no objection to the subject testimony at trial where Plaintiff testified to his desire to put on his uniform and return to work in a non-terminated status only to submit his resignation, and acquire the accompanying benefits that honorably retired Correctional Officers have at the Institution." (Mot. for Leave to Serve and File Am. Compl. (#49) at 1.)  Thus,

---

[2] Although Cosgrove labels his motion as a "Motion for Leave to Serve and File Amended Complaint," Cosgrove's points and authorities reflect that he is moving to conform the pleadings to the evidence under Federal Rule of Civil Procedure 15(b)(2). Even if Cosgrove were moving to amend the pleadings under Rule 15(a)(2), the court would deny the motion. Once judgment is entered, a motion to amend the complaint can be entertained only if the judgment is first reopened under a motion brought under Rule 59 or 60. *Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996).

3

Cosgrove argues, this court should permit amendment of the complaint so that injunctive relief may be ordered against Skolnik.

There are two difficulties with Cosgrove's request. Most obviously, NDOC[3] was not a party to this case at trial; thus, it could not have impliedly consented to any of the evidence presented. *Cf. Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000) (holding that a court may not amend a judgment to impose liability on a party who was not given the opportunity to defend against a claimant's allegations). Second, Defendant Whorton could not have consented to evidence on behalf of NDOC, because Whorton was sued in his individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Personal-capacity suits . . . seek to impose *individual liability upon a government officer* for actions taken under color of state law.") (emphasis added). Cosgrove's motion to amend the pleadings to conform to the evidence, and Cosgrove's motion for permanent injunctive relief are therefore denied.

**B. Motion for Attorneys' Fees**

Cosgrove has also moved for attorneys' fees pursuant to 42 U.S.C. § 1988(b). 42 U.S.C. § 1988 authorizes the court, in its discretion, to award reasonable attorneys' fees to the prevailing party in a § 1983 lawsuit. In the present case, Cosgrove is the prevailing party, as he obtained an enforceable judgment on the merits. *See Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002). The court will exercise its discretion to award attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ("[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.") (internal quotation marks omitted).

As outlined in *Morales v. City of San Rafael*, to determine a reasonable attorneys' fee,

---

[3]Because Cosgrove seeks to amend his complaint to sue Skolnik in his official capacity, Cosgrove is in reality seeking to name NDOC as an additional defendant. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent).

4

1  the following procedure is followed: (1) determine the number of hours the prevailing party
2  reasonably expended on the litigation; (2) determine the reasonable hourly rate; (3) multiply the
3  number of hours by the hourly rate to determine the "lodestar," and (4) if necessary, adjust the
4  lodestar in light of factors not already taken into account.  96 F.3d 359, 363-65 (9th Cir. 1995);
5  *Schneider v. Elko County Sheriff's Dep't*, 17 F. Supp. 2d 1162, 1166 (D. Nev. 1998).  The factors
6  set out in Local Rule 54-16 ("LR 54-16") guide the court's analysis.  *See Schneider*, 17 F. Supp. 2d
7  at 1166.

8  　　　The first step in setting a reasonable attorneys' fee is to determine the number of hours
9  Cosgrove's attorneys reasonably expended on the litigation.  *Morales*, 96 F.3d at 363-65.  Relevant
10 LR 54-16 factors include (A) the results obtained and the amount involved, (B) the time and labor
11 required, and (C) the novelty and difficulty of the questions involved.   Here, Cosgrove's attorneys
12 worked on Cosgrove's case for approximately 197 hours from December 20, 2006, through August
13 29, 2008.   In light of the substantial work required to bring this case through trial, the total hours
14 Cosgrove claims are not excessive.

15 　　　The second step in setting the reasonable attorneys' fee is to determine a reasonable hourly
16 rate.  Under LR 54-16, relevant factors to this analysis include (C) the novelty and difficulty of the
17 questions involved, (D) the skill required, (E) the preclusion of other employment; (F) the
18 customary fee, and (I) the experience, reputation, and ability of the attorneys.  Here, the court finds
19 that a reasonable hourly rate for Mr. Jeffrey Dickerson is $350 an hour.  A reasonable hourly rate
20 for Mr. James Boles is $250 an hour.

21 　　　The final step in determining the reasonable attorneys' fee is to multiply the number of
22 hours reasonably worked by the reasonable hourly rate for each person who performed the rate.
23 According to this calculation, the total fee for work completed by Mr. Dickerson is $60,760 (173.6
24 hours x $350).  The total fee for the work completed by Mr. Boles is $5,925 (23.7 hours x $250).
25 The court further finds that the hours expended are reasonable for a case of this nature.  Thus, the
26

5

court will award Cosgrove $66,685 in attorneys' fees.

**C. Motion for New Trial**

Perhaps the most substantial motion before the court is Whorton's motion for a new trial under Federal Rule of Civil Procedure 59(a). Whorton argues that the jury's verdict is contrary to the clear weight of the evidence presented at trial, and therefore this court should order a new trial. The court denies this motion.

Rule 59(a)(1) provides, "The court may, on motion, grant a new trial on all or some of the issues–and to any party–as follows: . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." As evidenced by the rule's text, "Rule 59 does not specify the grounds on which a motion for a new trial may be granted. Rather, the court is bound by those grounds that have been historically recognized. Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citations and internal quotation marks omitted). "[T]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id.* "Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Id.* (internal quotation marks omitted).

Although Whorton makes persuasive arguments in his motion for a new trial, the court finds that the verdict is not contrary to the clear weight of the evidence. Cosgrove presented evidence that six months elapsed from when the lieutenants found the DVDs and video equipment until Whorton made a final decision to terminate Cosgrove. During the majority of this period,

6

1  Cosgrove remained on tower duty.  Cosgrove also presented evidence that Whorton read the article
2  in which Cosgrove criticized Donat's operation of NSP.  There was also testimony that Whorton
3  said the worst part of his day is when he sees what news article is written about him.  The jury's
4  conclusion that Cosgrove's statement to the press was a substantial or motivating factor in
5  Whorton's decision to terminate Cosgrove is not contrary to the clear weight of the evidence.

6      **D.  Motion for Remittitur**

7      In the alternative to his motion for a new trial, Whorton moves this court for remittitur.
8  "Generally, a jury's award of damages is entitled to great deference, and should be upheld unless it
9  is clearly not supported by the evidence or only based on speculation or guesswork." *In re First*
10 *Alliance Mortgage Co.*, 471 F.3d 977, 1001 (9th Cir. 2006) (internal quotation marks omitted).  In
11 this review, the court must consider the evidence in a light most favorable to the prevailing party.
12 *See Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983).  If a court decides to
13 remit a judgment, it must sustain the award at the maximum amount sustainable by the evidence.
14 *See D & S Redi-Mix v. Sierra Redi-Mix & Contacting*, 692 F.2d 1245, 1249 (9th Cir. 1982).

15     Cosgrove testified that he earned approximately $50,000 in 2005, including overtime.
16 Cosgrove also testified that he intended to retire in December 2006.  Thus, Cosgrove's lost wages
17 would amount to what he would have earned from June 4, 2006, when he was terminated, until the
18 end of December–no more than $30,000.  Cosgrove also testified that, because of his termination,
19 he lost the right to use some services at the NDOC dry-cleaning plant and auto shop.  While
20 Cosgrove did not present figures concerning how much these benefits were worth, viewing the
21 evidence in the light most favorable to Cosgrove, the court finds they could not have exceeded a
22 value of $10,000.  Therefore, the remaining amount of the jury's award – $310,000 – must be
23 attributable to emotional distress.

24     At trial the only specific evidence Cosgrove presented as to emotional distress was his own
25 testimony about how he felt after being terminated: "You could have pushed me over with a

7

feather. I was completely shocked. Never saw it coming. You don't get fired for what I did. It's–it just amazed me." While the Ninth Circuit has held that evidence of emotional distress may be based solely on a plaintiff's own testimony, *see Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003), Cosgrove's presented no evidence of emotional distress beyond his initial reaction.

Other testimony by Cosgrove confirmed his plan to retire in December because he'd "had enough" and was "burned out" from his prison employment.[4] Before the court is a Plaintiff whose testimony concerning the emotional distress he suffered was limited to being completely shocked, not seeing it coming, and being amazed, "you could have pushed me over with a feather." Accepting the jury's verdict that his discharge was substantially motivated by his speaking to the press, the fact is that he was terminated from a job that he'd had enough of, was just burned out from, and was planning to retire from at his first opportunity some six months later. While the discharge would have caused emotional distress, there was no evidence presented to support any significant degree of emotional distress. Furthermore, his compensation benefits upon retirement were unaffected by his termination. The award of $310,000 for emotional distress is simply unsupportable by the evidence that was presented. The court is of the view that the maximum amount that could have possibly been sustainable by the evidence would be $200,000. Thus, the court remits the judgment to $240,000 unless Plaintiff chooses to accept a new trial on the issue of damages.

Whorton's motion for remittitur is therefore granted. Cosgrove may either accept a new trial on the issue of damages or a reduced judgment of $240,000.

**E. Motion for Stay of Judgment's Execution**

---

[4] When asked on cross-examination what he meant by the term "burned out" Cosgrove responded, "Basically fighting the system, trying to get things done right, getting nowhere with it. Pretty much the same reason I quit driving a truck. I just, I got burned out. It just bumping my head against the wall all the time, seeing no progress as an officer, and I guess I was just – I'd just pretty much had enough." Reporters' Transcript of Jury Trial (Day 2), p. 274, ll. 17-22.

Whorton also asks this court to stay execution of the court's judgment pending the disposition of his motion for a new trial. Because the court denies Whorton's motion for a new trial, his motion for stay of execution is denied as moot.

Finally, Whorton asks this court to relieve him, by the court's own motion, from the judgment pursuant to Federal Rule of Civil Procedure 60(d)(1). In support, Whorton contends that "[n]o judgment may be enforced against a state employee who was acting in his official capacity but, instead, must be obtained from the public entity that employed the state employee." (Mot. for Stay of Execution (#63) at 3.) The same argument was rejected by the United States Supreme court in *Hafer v. Melo*, where the Pennsylvania Auditor General contended that "state officials may not be held liable in their personal capacity for actions they take in their official capacity." 502 U.S. at 27. The Supreme Court responded,

> Through § 1983, Congress sought "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." Accordingly, it authorized suits to redress deprivations of civil rights by persons acting "under color of any [state] statute, ordinance, regulation, custom, or usage." The requirement of action under color of state law means that [the defendant] may be liable for discharging respondents precisely because of her authority as auditor general. We cannot accept the novel proposition that this same official authority insulates [the defendant] from suit.

*Id.* at 27-28 (citations omitted).[5] The court will not exercise its inherent power to relieve Whorton from the judgment. But because the court has granted Whorton's Motion for Remittitur (#56), a stay will necessarily occur in the event that Cosgrove elects to accept a new trial on the issue of damages. Otherwise, the stay will be granted for a period of ten (10) days, or earlier, in the event Cosgrove files an acceptance of the reduced judgment before then.

---

[5] Whorton also asks this court to relieve him from the judgment on the grounds that the Eleventh Amendment and qualified immunity operate to bar relief. Because Cosgrove was sued in his individual capacity, he cannot avail himself of the Eleventh Amendment's protection. *See Hafer*, 502 U.S. at 30 ("[I]t has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law."). Furthermore, Whorton never raised the issue of qualified immunity by motion or at trial. Thus, this court will not take the extraordinary step of relieving Whorton from this court's judgment by its own motion pursuant to Federal Rule of Civil Procedure 60(d)(1).

9

IT IS THEREFORE ORDERED that Plaintiff's Motion for Leave to Serve and File Amended Complaint (#49) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Permanent Injunctive Relief (#50) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Attorney's Fees (#51) is GRANTED. Plaintiff shall be awarded $66,685 in attorneys' fees.

IT IS FURTHER ORDERED that Defendant's Motion for Remittitur, or in the Alternative, Motion for New Trial (#56) is GRANTED. Cosgrove may either accept a new trial on the issue of damages or accept a reduced judgment of $240,000. He shall have ten (10) days to file his decision with the court.

IT IS FURTHER ORDERED that Defendant's Motion for Stay of Execution or Proceeding for Enforcement of Judgment (#62) is DENIED in part and GRANTED in part as reflected in this order.

IT IS SO ORDERED.

DATED this 14th day of November, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE